

# Missouri Court of Appeals
## Southern District

### In Division

ANIL MUELLER,                          )
                                       )
    Claimant-Appellant,        )
                                       )
vs.                                    )          No. SD37397
                                       )
PEOPLEASE CORPORATION,                 )          **Filed:  November 18, 2022**
                                       )
    Employer-Respondent.       )

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

**<u>AFFIRMED</u>**

Anil Mueller ("Claimant") appeals from the final award of the Labor and Industrial Relations Commission ("the Commission") affirming in part the decision rendered by Administrative Law Judge Kevin A. Elmer ("ALJ").  While the Commission specifically found Claimant received a compensable injury by accident while working as a welder and mechanic for Peoplease Corporation ("Employer"), *see* section 287.020,[1] it also found Claimant was not entitled to full compensation for his sought-after medical expenses or to any permanent disability compensation.  In two points, Claimant challenges the Commission's findings denying compensation.  Finding no reversible error as alleged in either of Claimant's points, the Commission's decision is affirmed.

---

[1] All statutory references are to RSMo 2016, unless otherwise indicated.

## Factual and Procedural Background

Claimant began working for Taylor Made Truck Repair ("Taylor Made") through Employer, a staffing agency, as a semi tractor-trailer mechanic in 2015. His job duties involved all aspects of repairing FedEx Ground semi-tractors, including welding. On January 13, 2015, Claimant was ordered to go get a loaded trailer from outside. When he hooked up the trailer, it did not catch right, and he was cranking down the handle and was getting exhaust fumes coming off the tractor blowing right at him. He started to get sick. He vomited outside. He realized something was wrong with the tractor so he brought it inside to inspect it over the pit. Claimant crawled down the stairs into the pit, looked up at the exhaust where it was cracked and leaking, and the truck was smoking "real bad" like there was a fire inside the shop. Exhaust fumes and smoke filled up the pit. He fell in the pit and had to sit and cough, and was lightheaded. He had a metallic taste in his mouth. He vomited again and lost consciousness inside the pit. He stood over in the corner by the heater trying to warm up. Kenny Arnold, right-hand man to the owner of Taylor Made, noticed something was wrong, and Claimant informed him that he did not feel well. Mr. Arnold directed him to go outside and get some air. Claimant went outside and vomited. At that time, Claimant's supervisor in the shop, Paul Finney, told him to go in the break room to see if he got to feeling better. Claimant sat down in the break room and "went unconscious." An ambulance was called. When the ambulance arrived, they placed Claimant on a stretcher and had to give him nitroglycerin to bring him back. When Claimant arrived at the hospital, he complained of chest pain, but left the emergency room against medical advice before tests could be run due to the wait time.

Claimant followed up with his primary care physician, Dr. Tarsney and complained of chest pain. Dr. Tarsney released Claimant to return to work. Dr. Tarsney asked Claimant to take a pulmonary function test but Claimant refused due to cost. Claimant informed Dr. Tarsney that

2

he would go get it done himself instead. Claimant went to Ozarks Community Hospital to have the test. On February 20, 2015, Claimant had a stress test performed at Mercy Hospital to prove he did not have a heart attack.

Claimant testified that he had suffered several injuries or medical conditions previously. First, in December 2006, Claimant worked for Stoughton Trailers. He suffered an injury there when he was welding and carbon monoxide fumes hurt his lungs at that time. He treated with Dr. Stephen Lindahl from Mercy Occupational Health Services and Dr. Robert Cook. Dr. Lindahl diagnosed him with work-related pulmonary bronchial disease. Claimant was released from their care on August 3, 2007, with no lasting disability or restrictions and was able to go back to work.

Later, in December 2011, Claimant suffered an inhalation injury working at Trux Trailer Shop in Springfield. He was welding on a DOT certification, propane and ammonia anhydrous tanker. When he torched it, the pores opened inside the tanker and exposed him to everything it possibly could. It was a metallic substance that even with the respirator he was wearing, he still got all the fumes in his lungs. This injury resulted in breathing difficulties.

Again, on August 2, 2012, Claimant suffered another work-related injury while employed at Trux. Claimant testified this injury was related to heat exhaustion. He had trouble breathing and focusing.

Claimant filed a claim for compensation against Employer with the Division of Workers' Compensation, which he later amended to allege that, on January 13, 2015, "[w]hile in the course and scope of employment, [he] was working in the maintenance pit under a truck with faulty emissions which exposed [Claimant] to large amounts of carbon-monoxide poisoning, causing injury." Employer filed a general denial in response to Claimant's claim.

3

Following an evidentiary hearing, the ALJ issued an award identifying the contested issues in need of resolution as follows:

(1) Whether [Claimant] sustained an accident or incident of occupational disease on or about January 13, 2015; and, if so, whether the accident or occupational disease arose out of and in the course of his employment with the employer.

(2) Whether the alleged accident caused the injuries and disabilities for which benefits are now being claimed.

(3) Whether the employer and insurer are obligated to pay for certain past medical care and expenses in the amount of $7,912.30.

(4) Whether [Claimant] sustained any permanent disability as a consequence of the alleged accident of January 13, 2015 and, if so, what is the nature and extent of the disability.

In addressing these issues, the ALJ concluded as follows: "There are two initial issues which are dispositive of this claim. First, there was no accident. Second, Claimant has failed to prove, if there was an accident, the accident was *the* prevailing factor in causing injury to Claimant." (Emphasis in original.)

Claimant filed an application for review with the Commission. In that application, Claimant set out the specific legal basis for his allegation of error as "[t]he ALJ's conclusions were erroneous because at the hearing, [Claimant] proved that he suffered an injury as the result of an unexpected traumatic event that produced objective symptoms of injury." Claimant specifically used the word "accident" to describe the cause of his injury. Claimant identified and asserted that the particular proof supporting his allegation was his testimony, medical records, and evaluations by Dr. Sean Tarsney and Dr. Thomas Hyers, all of which were offered and submitted to the ALJ.

Additionally, Claimant submitted a brief in support of his application. The contentions in the argument portion of that brief were that "[Claimant] Sustained An Injury As A Result of An *Accident* While Performing His Customary Work Duties For The Employer" and "[Claimant]

4

Established That The January 13, 2015 *Accident* Was The Prevailing Factor In Causing Him

Injury And Permanent Partial Disability." (Emphasis added). In the conclusion of the brief,

Claimant requested the following relief:

- A finding that [Claimant] suffered a compensable injury through an *accident* on January 13, 2015, which was the result of his work duties;

- [Claimant] is entitled to an award of permanent partial disability commensurate with substantial and competent evidence in the record, *utilizing the Last Exposure Doctrine, per [section] 287.063 RSMo..* Pursuant to the expert testimony on the record, such award is 75 percent permanent and partial disability to the body as a whole at the stipulated rate of $426.67; 75% or 300 weeks of disability, resulting in $128,001.00 for permanent and partial disability.

- Employer is responsible to pay to Claimant $9,857.34 for medical bills incurred to cure and relieve the symptoms of the January 13, 2015 work injury;

- Such further relief the Commission deems necessary and proper.

(Emphasis added.)

The Commission, thereafter, issued its final award reversing the ALJ's decision. The

Commission found "that [Claimant] sustained a work-related accident on January 13, 2015, as

defined by [section] 287.020.2 of the Workers' Compensation Law, consisting of carbon

monoxide poisoning."

As relevant to that finding, the Commission described the events surrounding Claimant's

work-related accident, as follows:

On January 13, 2015, the employer ordered [Claimant] to work on a loaded trailer with mechanical issues. [Claimant] attempted to hook the vehicle up outdoors, but when he did, "it didn't catch right . . . while I was trying to crank down the handle I was getting exhaust fumes off the tractor."[] [Claimant] began to feel sick, spit up and threw up. He decided to move the tractor inside to perform further diagnostics. The tractor's exhaust was cracked, leaking and the truck was smoking. [Claimant] started getting lightheaded and feeling sick. He recalled falling into the pit, climbing out, and then standing in a corner by a heater trying to warm up. A co-worker, Kenny Arnold, told [Claimant] he looked unwell and suggested that he go outside and get some air. After [Claimant] threw up again outdoors, his

5

supervisor Paul Finney, told him to go in the breakroom to see if he would feel better. When [Claimant] sat down at a table in the breakroom, he lost consciousness. In response, the employer summoned emergency medical services (EMS). EMS technicians put [Claimant] on a stretcher and gave him nitroglycerin to revive him. They then transferred [Claimant] to Mercy Hospital Springfield's Emergency Department (ED). ED notes recorded [Claimant's] complaints of chest pain and shortness of breath. The employee[Claimant] told ED nurse Nicholas Locke that he had vomited and vaguely remembered passing out. ED provider Dr. Ted McMurry found no evidence of cardiac ischemia or injury by ECG or troponin and noted [Claimant] "stated he felt the problem was primarily his lungs."[] [Claimant] refused admission to the hospital for further evaluation and treatment. He left the hospital against medical advice.

(Footnotes omitted.)

The Commission further found that "[Claimant] subsequently sought follow-up treatment with his personal physician, Dr. Tarsney, and underwent a pulmonary function test at Ozarks Community Hospital at his own expense." Dr. Tarsney's diagnosis, which was credited by the Commission, was that Claimant had received a "carbon monoxide injury."

Based on these findings, the Commission "award[ed] $3,390.52[2] for [Claimant's] EMS transportation and emergency room treatment related to his work injury on the date of the accident." The basis for this award, the Commission, explained, was as follows:

> Employer authorized and approved [Claimant's] transportation by EMS to the Mercy Hospital Springfield after [Claimant's] collapse at work on January 13, 2015. [Claimant] produced medical records documenting medical services rendered by EMS technicians and ED medical providers that flowed from his work injury. He submitted bills he received from medical providers of $1,586.02 for EMS service and $3,804.50 related to his ED treatment that day. The employer offered no evidence that these medical bills were not reasonable. We find this evidence in the record provides a sufficient factual basis to award [Claimant] past medical for his EMS and emergency room treatment on the date of the injury.

(Legal citation omitted.)

---

[2] Claimant does not challenge this award amount in his Point 1 but only challenges the Commission's failure to award any amount for subsequent medical expenses.

6

The Commission, however, did not award Claimant any compensation for medical expenses incurred after he "refused admission to the hospital for further evaluation and treatment." Such expenses were documented by "bills for follow-up treatment with Dr. Tarsney, pulmonary testing at Ozarks Community Hospital, and additional diagnostic evaluations at Mercy Hospital on February 20, 2015." As the Commission explained:

> We find that employer *did not authorize* [Claimant's] subsequent treatment with other medical providers after [Claimant] declined further treatment at the hospital on the date of the injury against medical advice. We, therefore, award no reimbursement for additional bills related to subsequent treatment for [Claimant's] pulmonary and heart conditions produced at the hearing.

(Emphasis added.)

The Commission also denied Claimant any permanent disability compensation. The Commission found that Dr. Hyers diagnosed Claimant with "progressive restrictive lung disease (smaller than normal-sized lungs) as a result of inhalational injury from welding and other workplace exposures dating back to at least 2007." In pertinent part, on December 29, 2011, and August 2, 2012, Claimant " was heat-torching and welding inside a trailer that had transported anhydrous ammonia" and "suffered heat exhaustion[,]" respectively. According to Dr. Hyers, "[t]he workplace exposures on or about 12-29-2011, 08-02-2012 *and* 01-13-2015 are the prevailing factors in causing his disability. . . ." (Emphasis added).

In determining that permanent disability compensation was not warranted under these facts, the Commission explained:

> There is *no evidence* in the record to support a finding that [Claimant's] January 13, 2015, accident was *the prevailing factor* in causing his pulmonary disease. We note that [Claimant's] expert, Dr. Hyers, conceded that other work injuries contributed to [Claimant's] current pulmonary condition. The contention that the employer should be liable for 75% of the body as a whole related to pulmonary disease based on the last exposure rule under [section] 287.063, briefly raised in [Claimant's] brief, was not referenced in any pleadings or identified as an issue in [Claimant's] application for review. [Claimant], therefore, *failed to preserve this*

7

*issue for our review*.  Based on these findings, we award no compensation for permanent disability related to [Claimant's] January 13, 2015, work injury.

(Emphasis added.)

This appeal timely followed.  For ease of analysis, Claimant's points are reviewed in reverse order.

## Standard of Review

"This Court may modify, reverse, remand, or set aside the Commission's decision only when: (1) the Commission acted *ultra vires*; (2) the decision was procured fraudulently; (3) the facts found by the Commission do not support the award; (4) there was not sufficient competent evidence to support the award." *Mantia v. Mo. Dep't of Transp.*, 529 S.W.3d 804, 808 (Mo. banc 2017); section 287.495.1.[]  The whole record must be examined to determine whether there is sufficient and competent evidence to support the Commission's decision.  *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222-23 (Mo. banc 2003).  Questions of law are reviewed *de novo*.  *Cosby v. Treasurer of State*, 579 S.W.3d 202, 206 (Mo. banc 2019).

*Schoen v. Mid-Missouri Mental Health Center*, 597 S.W.3d 657, 659 (Mo. banc 2020)

(footnote omitted).

## Discussion

### *Point 2 – Challenge to the Denial of Permanent Disability Benefits Fails*

In his second point, Claimant contends:

The Commission erred in entering an award denying [Claimant] permanent partial disability benefits because [Claimant] met his burden of proof in establishing the workplace *accident* was the prevailing factor in causing him permanent injury and in the award the Commission arbitrarily disregarded, ignored, and rejected unimpeached and uncontroverted medical evidence and testimony that [Claimant] had permanent injuries as a result of the workplace *accident*, against the overwhelming weight of the evidence.

(Emphasis added.)

In the argument section of his brief, however, Claimant does not focus entirely on the legal standard for determining whether his *accident* was the prevailing factor in causing him permanent injury.  Rather, Claimant spends the bulk of his argument asserting that his diagnosed

8

pulmonary disease qualifies as an "occupational disease" as that term is defined under section 287.067.2 and that Employer is liable for his resulting permanent disability under the "Last Exposure Doctrine" provided by section 287.063.

There are myriad problems with these arguments. First, Claimant fails to appreciate or apprehend that an injury by accident is legally distinct and different than an injury by occupational disease. Under Missouri's Workers' Compensation Law, "[e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident *or* occupational disease arising out of and in the course of the employee's employment." Section 287.120.1 (emphasis added). Injury by accident is governed by section 287.020, which defines "accident" as "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.2. Injury by occupational disease, however, is governed by section 287.067, which defines "occupational disease" in a different manner as "an identifiable disease arising with or without human fault out of and in the course of the employment." Section 287.067.1.

In his point relied on, Claimant only claims that the Commission's denial of permanent partial disability benefits was erroneous because Claimant proved that "the workplace *accident* was the prevailing factor in causing him permanent injury." (Emphasis added.) It follows and is required that Claimant's "argument shall be limited to those errors included in the 'Point[] Relied On.'" Rule 84.04(e).[3] Therefore, Claimant's assertion he also succumbed to an occupational disease, first introduced and found only in his supporting argument, runs afoul of these briefing

---

[3] All rule references are to Missouri Court Rules 2022.

9

requirements. "Arguments not encompassed by the point relied on are not preserved for review . . . ." *Hazeltine v. Second Injury Fund*, 591 S.W.3d 45, 57 n.7 (Mo. App. E.D. 2019) (internal quotation marks omitted).

Claimant never claimed, in his application for review, that the ALJ erred in failing to consider the issue and evidence of occupational disease. "An application for review of any final award, order, or decision of the administrative law judge shall state specifically in the application the reason the applicant believes the findings and conclusions of the administrative law judge on the controlling issues are not properly supported." 8 CSR 20-3.030(3)(A). The Commission, having never been directed to consider occupational disease, also never addressed it as part of its final award.

However, the fact that the Commission never addressed the issue of occupational disease is relevant to another issue that it *did* address—the "last exposure" rule. "Section 287.063.2, deemed the 'last exposure rule,' provides that the 'employer liable for [workers' compensation benefits] shall be the employer in whose employment the employee was last exposed to the hazard of the *occupational disease*.'" *Accident Fund Insurance Co. v. Casey*, 550 S.W.3d 76, 80 (Mo. banc 2018) (alteration in original) (emphasis added) (quoting section 287.063.2). The Commission declined to address this rule because, although it was mentioned in a brief filed by Claimant, it was not referenced in any of his pleadings or in his application for review and, therefore, was unpreserved.

In his argument, Claimant attempts to assign error to the Commission's finding that the last exposure rule was unpreserved by attempting to tie the rule to the claims Claimant raised in his application for review. Again, Claimant fails to distinguish between injury claims by accident and injury claims by occupational disease. In his application for review, Claimant only

10

asserted that "[t]he ALJ's conclusions were erroneous because at the hearing, [Claimant] proved that he suffered an injury as the result of an unexpected traumatic event that produced objective symptoms of injury." This allegation of error generally conforms to the definition for "accident" under section 287.020.2, and Claimant further referred to an "accident" several times elsewhere in his application for review. Because the last exposure rule, however, is only applicable to *occupational disease* claims, *see* section 287.063, it has no application and is not relevant to Claimant's *accident* claim.

For all of the aforementioned reasons, we must limit our discussion to the claim in Claimant's point relied on that the Commission's denial of permanent partial disability benefits was erroneous because Claimant proved that "the workplace *accident* was the prevailing factor in causing him permanent injury." (Emphasis added.) "An injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.020.3(1). The definition for "the prevailing factor" is "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.*

Claimant concedes that no expert explicitly opined that his accident was the prevailing factor in causing his pulmonary disease. Instead, Claimant argues that this is a case in which, while Dr. Hyers did not utilize "magic" words, the "substance and import" of his opinion was that Claimant's workplace accident on January 13, 2015, was the prevailing factor in causing his pulmonary disease.

Claimant's argument is refuted by the record. Dr. Hyers explicitly and clearly opined that "[t]he workplace exposures on or about 12-29-2011, 08-02-2012 *and* 01-13-2015 are the prevailing factors in causing [Claimant's] disability . . . ." (Emphasis added.) In other words,

11

the "substance and import" of Dr. Hyers' opinion was that Claimant's workplace accident on January 13, 2015, was *not* "the primary factor, in relation to any other factor," but, instead, was one of *three* factors, occurring years apart, "causing both the resulting medical condition and disability." Section 287.020.3(1). Accordingly, Claimant fails to demonstrate any Commission error in denying Claimant compensation for his pulmonary disease. Point 2 is denied.

### *Point 1 – Challenge to Partial Award for Claimant's Medical Expenses Fails*

In his first point, Claimant contends:

The Commission erred in entering only a partial award for [Claimant's] medical bills incurred as a result of the workplace accident because the Employer is responsible for all medical treatment necessary to cure and relieve the symptoms of the workplace accident in that it refused to provide authorized treatment to [Claimant].

In issuing its partial award, the Commission found, according to Claimant, that section 287.140 did not authorize any of the medical services that Claimant sought and received following the date of his accident. Claimant argues that "[t]his finding is not supported by the record or by the application of the statute to the facts of this case." We disagree.

The statute in question provides, in pertinent part:

In addition to all other compensation paid to the employee under this section, the employee shall receive and the employer shall provide such medical, surgical, chiropractic, and hospital treatment, including nursing, custodial, ambulance and medicines, as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury.

Section 287.140.1. However, "[t]he employer *shall have the right* to select the licensed treating physician, surgeon, chiropractic physician, or other health care provider . . . ." Section 287.140.10 (emphasis added). "If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement *at his own expense*." Section 287.140.1 (emphasis added). Accordingly, "[i]t is only when the employer fails to provide medical treatment that the

12

employee is free to pick [his] own provider and assess those costs against [his] employer."

***Beatrice v. Curators of University of Missouri***, 438 S.W.3d 426, 436 (Mo. App. W.D. 2014).

Here, the Commission found that Employer "authorized" EMS and ED services for Claimant on the date of his accident. The Commission also found that Claimant "left the hospital against medical advice." The Commission's further finding that Employer "did not authorize [Claimant's] subsequent treatment with other medical providers after [Claimant] declined further treatment at the hospital on the date of the injury against medical advice" suggests that the Commission implicitly found that Claimant chose, instead of continuing with the Employer-authorized care, to select his own physician at his own expense as provided by section 287.140.1.

Claimant dismisses this suggestion, asserting instead, that "[he] did not 'direct care.'" Dr. Tarsney, according to Claimant, was "the doctor referred by the emergency room staff" and Claimant "simply went to the providers who he was told to treat with . . . ."

The medical report generated by Claimant's ED visit, however, dispels his argument that he did not direct care. One of the ED physicians who treated Claimant noted as follows:

> Because of the patient's family history and onset of this left chest pressure associated with physical exertion that almost resolved with sublingual nitroglycerin, I did recommend [to]the patient that he be admitted to the hospitalist service for serial troponin test and a stress test tomorrow if these were negative. Initially he agreed to this plan of care however subsequently he did change his mind and declined admission.
>
> I did explain to the patient and his wife and son that this was AGAINST MEDICAL ADVICE and the potential risk of death as a worst case [scenario] of . . . the potential unstable condition involving his heart. He stated he felt the problem was primarily his lungs however did agree to followup with a primary care provider and have a stress test ordered as an outpatient. I did stress to the patient the importance of returning for any recurrence or worsening symptoms and he did agree to do this. I also called and spoke with Dr. Tarsney, the patient's physician from the primary care call box that he will be following up with the [sic] did agree to see the patient this week.

In other words, Claimant was presented two options: (1) follow the recommendation by the ED physician, whom, as the Commission found, had been authorized by Employer, and admit himself to the hospitalist service for further evaluation and testing; or (2) follow up with Dr. Tarsney, "the patient's" primary care physician, to receive, as an outpatient, evaluation and testing at a later date.

Ultimately, Claimant rejected the recommendation of the Employer-authorized physician and *selected* the latter option involving a different physician providing medical services in a different context. The Commission was free to find from this evidence that Claimant opted to select Dr. Tarsney, and all of the medical testing and treatment resulting from that decision, at his own expense as provided by section 287.140.1. *Cf. **Moorman v. Central Theatres Corp.***, 98 S.W.2d 987, 992 (Mo. App. St.L.D. 1936) (affirming finding by the Commission that an employee who "refused the medical attention offered by the employer and called in her own doctors . . . and, having thus exercised her right under the statute, she did so at her own expense and must be held thereby to have waived any claim upon her employer for the expenses . . ."). Accordingly, Claimant fails to demonstrate any Commission error in denying Claimant compensation for these medical expenses. Point 1 is denied.

## Decision

The Commission's award is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

MARY W. SHEFFIELD, J. – CONCURS

GARY W. LYNCH, S.J. – CONCURS

14